**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CARL E. BERRY III, | Case No. 1:18-cv-207 |
| Plaintiff, | Black, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Carl E. Berry III filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be REVERSED and REMANDED for an immediate award of benefits because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In October 2013, Plaintiff filed for Supplemental Security Income alleging a disability onset date of July 17, 1994, when he was 13 years old. (Tr. 12). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On June 16, 2016, ALJ Kevin Detherage held a hearing at which Plaintiff appeared with a non-attorney representative. The ALJ heard testimony from Plaintiff and an impartial vocational expert. *Id.* In December 2016, the ALJ determined that Plaintiff was not under a disability as defined by the Social Security Act. (Tr. 12-19). The Appeals Council denied Plaintiff's request

1

for review in January 2018. (Tr. 1). Plaintiff filed an appeal to this Court on March 26, 2018, seeking judicial review of the denial of his application for benefits.

Plaintiff was 32-years-old on the date his application was filed (Tr. 18). He is married and holds a high school diploma. (Tr. 18). Plaintiff has stated that he can perform some exercises and household chores, can prepare meals, can drive for short periods, and can go grocery shopping. (Tr. 16). Plaintiff has no past relevant work. (Tr. 18).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "cardiomyopathy, dyspnea, sickle cell anemia, remote history of a gunshot wound, and syncope." (Tr. 14). (Tr. 16). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1 (Tr. 14). The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform unskilled, sedentary work with the following limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds, and can occasionally climb ramps or stairs. He should avoid exposure to hazards, such as heights or machinery with moving parts. He should avoid concentrated exposure to dusts, fumes, gases, odors, or poorly ventilated areas. The claimant cannot perform commercial driving. In addition, [claimant] is likely to be absent from work 1 day per month.

(Tr. 15). Plaintiff has no past relevant work, so the ALJ could not make a determination of transferability of job skills. (Tr. 18). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as

assembler, packer, and inspector. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) weighing the opinion evidence of record incorrectly; 2) determining an RFC for sedentary work based on outdated or incomplete records. Upon close analysis, I find Plaintiff's first assignment of error to be dispositive and herein recommend remanding this matter for an immediate award of benefits.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is not supported by Substantial Evidence**

*1. Relevant Medical Evidence*

Plaintiff has a long history of restrictive cardiomyopathy dating back to at least 2010, where he received treatment at the heart failure clinic at Children's Hospital Medical Center with Dr. John Jefferies. (Tr. 295). In December 2012, Plaintiff presented to Dr. Jeffries due to episodes of syncope not related to activity, chest pains, and shortness of breath. *Id.* An echocardiogram was performed and revealed right and left atrial enlargement, and increase in the left atrial volume from the prior study, mild to moderate left atrial dilation, inferior vena cava dilation, mitral valve regurgitation, tricuspid regurgitation, and an ejection fraction of 50-55%. (Tr. 296).

On August 6, 2013, Plaintiff presented to the emergency room at University Hospital where he was having a syncopal episode, likely related to his cardiac arrhythmia (Tr. 252). An echocardiogram was performed which measured Plaintiff's ejection fraction as 60-65%. (Tr. 271). Plaintiff was instructed to carefully monitor symptoms and obtain a cardiac MRI to further evaluate need for implantable cardioverter defibrillator (ICD) placement. (Tr. 254).

On November 4, 2013, Plaintiff was admitted to Children's Hospital for ICD placement surgery. (Tr. 460). The procedure went well without complication and Plaintiff was discharged on November 5, 2013 with medication, wound care instructions, and instructed to avoid strenuous activity and return for a follow-up in one month. (Tr. 460-462).

Plaintiff returned to Dr. Czosek, his surgeon, for a post implant follow-up on December 3, 2013. (Tr. 527). Plaintiff appeared to be tolerating the implant well and was instructed to continue medications as prescribed, report device transmissions every three months, follow-up for formal ICD interrogation's every 12 months and return to Dr. Jeffries as scheduled. *Id.*

Plaintiff retuned to Dr. Jeffries on February 26, 2014 for evaluation of his cough. (Tr. 602). Dr. Jeffries stated that the cough was likely related to viral illness but that a new systolic murmur was present. (Tr. 607). Readings from the Plaintiff's ICD confirmed intermittent atrial tachycardia and Dr. Jeffries ordered additional testing and lab work to evaluate. *Id.* Labs and x-rays performed on March 9, 2014, as ordered by Dr. Jeffries, revealed B Nantriuretic Peptide levels of 330, with the normal level being under 100 for patients without heart failure. (Tr. 632).

An ICD Check on January 20, 2015 showed two episodes of ventricular tachycardia ("VT"). (Tr. 898). An ICD check on May 6, 2015 revealed eight episodes of VT. (Tr. 926). An overview of incidents showed approximately thirty episodes of arrhythmia from April 2014 to April 2015. (Tr. 936).

An ICD check performed on August 6, 2015 revealed six episodes of VT since the last check. (Tr. 948). An ICD check on November 6, 2015 revealed fifteen sustained

6

episodes of VT and twenty-five supraventricular tachycardia ("SVT") wavelet episodes all from October 8, 2015. (Tr. 975).

On December 7, 2015 Plaintiff returned to Dr. Jeffries for a follow-up appointment. (Tr. 866). Plaintiff reported no change in symptoms, but due to carelink readings Dr. Jeffries recommended the addition of a beta blocker and additional close follow-up. (Tr. 869). Dr. Jeffries instructed Plaintiff to return in 6 months with new imaging, continue medications and start beta blockers, and restrict activity. *Id.*

An ICD check on February 8, 2016 revealed one episode of VT since the last check. (Tr. 1114). On May 23, 2016, Plaintiff presented to his appointment with Dr. Jeffries in a state of atrial flutter. (Tr. 1068). Dr. Jeffries recommended cardioversion, but Plaintiff decided to wait to see if issue resolved itself. (Tr. 1069). If flutter was still present on May 25, 2016 at Plaintiff's ICD check he would be admitted for cardioversion. *Id.*

On May 25, 2016, Plaintiff was admitted to Children's Hospital for a cardioversion procedure to treat his persistent atrial flutter. (Tr. 1127). However, during his hospital stay, he had spontaneous conversion to sinus rhythm, so the cardioversion procedure was canceled. (Tr. 1130-1131). Plaintiff presented to the ER again on June 14, 2016 complaining of palpitations and ICD shock. (Tr. 1164). It was determined that Plaintiff was in atrial fibrillation with rapid ventricular rate. (Tr. 1168). The ER staff recommended admission, but Plaintiff opted for increased medication doses and to follow-up with Dr. Jeffries. *Id.*

7

2. *Evaluation of the Opinion Evidence*

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of his treating physician, Dr. Jefferies. The undersigned agrees.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added)." "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the

8

frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); Wilson, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). Thus, the treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'f Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

Here, in formulating Plaintiff's RFC, the ALJ gave great weight to the findings of the state agency physicians. Notably, Dr. Bolz reviewed the Plaintiff's medical file and opined that Plaintiff could perform a limited range of sedentary work. Dr. Bolz opinion was affirmed on reconsideration by Dr. Leon Hughes. Upon review of the record, Dr. Hughes noted that Plaintiff was recovering well after a defibrillator implant. The ALJ determined that these opinions were consistent with the medical record that supports that Plaintiff's cardiac symptoms have been stabilized and treated, and that he can perform some activities of daily living. (Tr. 17). The ALJ gave little weight to the opinion of Dr. Jefferies, Plaintiff's treating cardiologist. Id.

Dr. Jefferies completed a cardiac RFC on January 7, 2015. He listed Plaintiff's diagnosis as a Class III[1] on the New York Heart Association's functional classification chart. (Tr. 663). He records symptoms of heart palpitation, dizziness, and syncope

---

[1] According to the American Heart Association, class III heart failure is defined as a marked limitation of physical activity. Comfortable at rest. Less than ordinary activity causes fatigue, palpitation, or dyspnea. http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-HeartFailure_UCM_306328_Article.jsp#.W1dOHtVKiUk

which are evidences in both office visit records, hospital records, and monitoring of his ICD. *Id.*

Dr. Jefferies opined that Plaintiff's cardiac symptoms would often interfere with Plaintiff's attention and concentration. Dr. Jefferies determined that Plaintiff could handle low stress jobs and could sit and stand for more than two hours at a time, however, he would need to shift positions at will, would need unscheduled breaks of indefinite length, and would on average miss more than four days of work per month. (Tr. 664, 666, 668). The ALJ's gave Dr. Jefferies' opinion "little weight" because it is "not supported by the record." The ALJ asserted that Plaintiff's cardiac symptoms have stabilized and there is no support that claimant would need to miss work more than four days per month. (Tr. 17).[2]

Plaintiff argues that the ALJ's rationale relating to Dr. Jefferies findings is not supported by the record. Notably, although the ALJ found that Plaintiff's cardiac symptoms had stabilized, Plaintiff argues that the medical evidence of record shows that he was admitted to the hospital due to persistent atrial flutter less than a month before the administrative hearing (Tr. 1130-1131) and was treated in the ER two days prior to the hearing after his ICD fired. (Tr. 1161). Prior to his hospitalization in May 2016, his ICD check showed seventy-one VT episodes. (Tr. 1204). In fact, ICD checks following the implantation of the device showed repeated episodes of VT and SVT. (Tr. 719, 754, 778; 897, 925, 936, 947, 974; 1088, 1113). Dr. Jefferies noted that Plaintiff

---

[2] The ALJ also assigned "some weight" to the findings of Dr. Fritzhand, the consultative examiner. Dr. Fritzhand opined that Plaintiff may be incapable of performing even a mild amount of sitting, ambulating, standing, bending, pushing, pulling, lifting, and carrying heavy objects. The ALJ gave this opinion some deference, noting that "evidence that the claimant's impairments are being treated and his ability to perform activities of daily living supports greater exertional limitations. (Tr. 17).

10

experienced cardiac symptoms often, which is supported by the findings on ICD monitoring.

Plaintiff further asserts that that the ALJ erred in rejecting Dr. Jefferies opinion, based at least in part on Plaintiff's ability to perform "some" daily activities. The ALJ wrote that Plaintiff is "able to perform activities of daily living such as driving, shopping, and performing some household chores. The record does not support that the claimant would need to miss work more than four days per month." (Tr. 17). However, it is well established that claimant's ability to perform light household chores and attend to personal needs does not translate to an ability to perform substantial gainful activity. *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007); *Barker-Bair v. Comm'r of Soc. Sec.*, No. 1:06-cv-00696, 2008 U.S. Dist. LEXIS 27011, at * 11 (S.D. Ohio Apr. 3, 2008) (*citing Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)). The undersigned agrees that plaintiff's ability to engage in daily activities does not establish *ipso facto* that he is able to engage in gainful activity 40 hours per week. *Bramel v. Comm'r of Soc. Sec.*, No. 1:13CV281, 2014 WL 4162543, at *9 (S.D. Ohio Aug. 20, 2014).

When the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. *Id.* Good reasons "must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-407; *see also* Soc. Sec. Rul. 96–2p. An ALJ's failure to provide an adequate explanation for according less than controlling weight to a treating source may only be excused if the error is harmless

11

or de minimis, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Blakley,* 581 F.3d at 409 (quoting *Wilson,* 378 F.3d at 547).

Here, the ALJ's articulated reasons for rejecting Dr. Jefferies opinions do not constitute "good reasons" for rejecting all of his findings. As noted above, the ALJ's determination that Plaintiff's condition had stabilized was not supported by the record evidence. Moreover, the ALJ improperly determined that Plaintiff's activities of daily living were incompatible with Dr. Jefferies very restrictive opinion. (Doc 14, p. 3). Notably, Dr. Jefferies found that Plaintiff could sit and stand/walk over 2 hours, however he would require an uncertain number of unscheduled breaks (Tr. 666) and would likely have good and bad days (Tr. 668). As detailed by Plaintiff, this is consistent with Plaintiff's testimony at the hearing regarding his daily activities. Plaintiff testified that he needs to lay down when he feels the onset of symptoms, such as dizziness and lightheadedness (Tr. 42, 44). Likewise, in reports to the agency Plaintiff reported that he experienced shortness of breath and lightheadedness requiring him to take a break. (Tr. 210). He also noted that he must sit or lay down until he has an even rhythm with his heart. (Tr. 200). The record further indicates that Plaintiff's device repeatedly showed numerous episodes of VT and SVT. (Tr. 720, 755, 778, 898, 926, 936, 948, 975, 1114). Due to reports from the device monitoring, Dr. Jefferies instructed Plaintiff to restrict activities and add beta blockers. (Tr. 869).

Furthermore, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a

claimant over a period of years. *See Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983). At the time of the administrative hearing, Dr. Jefferies had been treating Plaintiff for three years and he is a cardiac specialist. Dr. Jefferies also had the opportunity to monitor Plaintiff's ICD and cardiac symptoms during examinations. In contrast, the state agency physician, who the ALJ afforded deference, are not cardiologists and did not examine Plaintiff. Namely, Dr. Bolz's specialty is identified as orthopedic, while Dr. Hughes is a family practitioner. See 20 C.F.R. § 404.1527(d)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Furthermore, the state agency physicians did not review the complete record. As noted by Plaintiff, following their review, Plaintiff had numerous ICD checks that reported repeated episodes of VT and SVT, had 3 additional echocardiograms and a hospitalization for persistent atrial flutter.

Additionally, it appears that the ALJ applied a more rigorous scrutiny to Dr. Jefferies opinions than to those of the nonexamining opinions. The Sixth Circuit has found that this is precisely the inverse of the analysis that the regulation requires. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013), reh'g denied (May 2, 2013). See also 20 C.F.R. § 404.1527(c); Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996). As such, the ALJ's decision indicates that his assessment of the opinion evidence failed to abide by the Commissioner's regulations and therefore calls into question the ALJ's analysis. *See Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) ("An ALJ's failure to

follow agency rules and regulations denotes a lack of substantial evidence." (internal quotation marks omitted)).

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir.1994); *see also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir.1990); *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 782 (6th Cir.1987).
The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher,* 17 F.3d at 176; *see also Felisky,* 35 F.3d at 1041; *Mowery v. Heckler,* 772 F.2d 966, 973 (6th Cir.1985). Such is the case here.

Here proof of disability *is* overwhelming and remand will serve no purpose other than delay. As fully explained above, in view of the extensive medical record of evidence of disability, hospitalizations, and the credible and controlling findings of Dr. Jefferies proof of disability is overwhelming.

## III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED** to the Commissioner of Social Security for an immediate award of benefits; and that this case be **CLOSED** in this Court.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CARL E. BERRY III, | Case No. 1:18-cv-207 |
| Plaintiff, | Black, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).