# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CARL E. BERRY,                                           Case No: 1:18-cv-207

            Plaintiff,                              Black, J.
   v.                                                   Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

## REPORT AND RECOMMENDATION

Plaintiff's motion for attorney's fees has been referred to the undersigned for initial review. I recommend that the motion be construed as if filed under 42 U.S.C. §1383(d) and be GRANTED only in part, with the amount of fees to be reduced to avoid a windfall.

## I. Background

The above-captioned case arises out of Plaintiff's judicial appeal to challenge the Defendant's denial of application for Supplemental Security Income payments under Title XVI of the Social Security Act. On July 26, 2019, the undersigned recommended that the non-disability finding be reversed and remanded for an immediate award of SSI benefits. The presiding district judge adopted that Report and Recommendation on September 29, 2019. (Docs. 16, 19). On October 10, 2019, the Court granted the parties' joint motion for an award of attorney's fees to be made to Plaintiff's counsel under the Equal Access for Justice Act ("EAJA"). (Doc. 22).

On December 11, 2019, the Social Security Administration issued a Notice of Award that calculated Plaintiff's past due SSI benefits at $51,332.12. Just prior to the expiration of the deadline for filing a further motion for attorney's fees under the Social

Security Act,[1] Plaintiff's counsel sought and was granted an extension of time in which to file a motion for attorney's fees under 42 U.S.C. § 406(b). (Doc. 23). Pursuant to that extension, Plaintiff's counsel timely filed a motion seeking an additional fee award under the provisions of the Social Security Act. The Commissioner has filed a response in opposition to the motion, to which counsel has filed a reply.[2]

## II.    Analysis

### A.  Construing the Fee Motion Under the Correct Statute

In support of the award, counsel first argues that he successfully pursued and won for his client a large award of past-due SSI benefits under Title XVI. Notably, counsel did not pursue an award of past-due DIB benefits under Title II. Because Plaintiff was not awarded DIB benefits, this Court may not award attorney's fees under the particular statute on which counsel relies. As this Court previously advised last year in *Pennington v. Com'r.,* Case No. 1:17-cv-264, 2019 WL 3228896 (S.D. Ohio July 18, 2019), 42 U.S.C. § 406(b) "covers only attorneys whose clients bring successful claims under Title II of the Social Security Act." *Napier v. Commissioner*, 190 Fed. Appx. 458, 459-60 (6th Cir.2006); *see also generally Bowen v. Galbreath*, 108 S. Ct. 892 (1988) (citing 42 U.S.C. § 406(b)); *McCarthy v. Sec'y of Health and Human Servs.*, 793 F.2d 741 (6th Cir. 1986).

The fact that no award may be made under 42 U.S.C. § 406(b) does not mean that counsel must go uncompensated. Rather, Congress has provided for compensation

---

[1] Local Rule 54.2(b) specifies that a motion for attorney's fees under the Social Security Act must be filed within forty-five days of the Notice of Award. *See Rabong v. Com'r of Soc. Sec.*, Case No. 1:14-cv-811, 2018 WL 558918 (S.D. Ohio Jan. 25, 2018) (directing counsel to address timeliness issue, but approving fee amounting to $519.60 per hour); *Hancock v. Com'r*, Case No. 1:15-cv-198, 2018 WL 504845 (S.D. Ohio Oct. 17, 2018) (citing untimeliness of motion and counsel's failure to comply with *Rabong*, reducing award rate to $389); *Pennington v. Com'r*, 2019 WL 5066850 (S.D. Ohio Oct. 9, 2019) (approving rate of $499 for timely filed motion).

[2] Because counsel's interests are adverse to those of his client in this instance, the undersigned uses "counsel" in lieu of "Plaintiff" for the remainder of this R&R.

through a parallel statute applicable to Title XVI of the Social Security Act. *See* 42 U.S.C. §1383(d)(2). As the Court did in *Pennington*, in the interests of justice, the undersigned will construe counsel's motion as if properly filed under §1383(d). Because §1383(d) contains nearly identical language and is intended to produce the same result as §406(b),[3] the same case law and analysis applies. Both §406(d) and §1383(d) cap fees at 25% of any past-due benefits award and impose criminal penalties upon any attorney who would seek to exceed that maximum. In this case, 25% of the past due benefits award yields a maximum fee of $12,833.05. *See* §1383(d)(2)(B)(i).

### B. Determining a Reasonable Fee

Nearly two decades ago in *Gisbrecht v. Barnhardt*, 535 U.S. 808-809 (2002), the Supreme Court held that the Social Security Act does not wholly displace contingent fee agreements but does impose an affirmative duty on courts to review for reasonableness the fees that result from those agreements. More recently in *Ringel v. Com'r of Soc. Sec.*, 295 F. Supp.3d 816 (S.D. Ohio 2018), a case involving another attorney from the same law firm, this Court closely examined Sixth Circuit case law since *Gisbrecht* with the "modest ambition of amplifying the concerns previously expressed in controlling case law." *Id.* at 824.

> Case law emphasizes the affirmative obligation of courts to determine whether a fee award is "reasonable," even when supported by an unopposed motion that relies on a standard contingency fee agreement within the 25% statutory cap. *Lowery v. Com'r of Soc. Sec.*, 940 F.Supp.2d 689, 691 (S.D. Ohio 2013) (approving unopposed motion for fee where counsel did not request full 25% fee authorized by agreement, but instead voluntarily reduced fee to 14.5% of past-due benefits award). A primary reason for all this scrutiny is that, unlike the EAJA award received… for the same work, the § 406(b) fee award is paid directly out of, and therefore directly reduces, the amount of the past-due benefits paid to the disabled

---

[3] 42 U.S.C. § 1383(d)(2)(A)(iv) expressly incorporates the language of § 406(b)(1)(A), but alters that language slightly to state that the Commissioner may "pay the amount of such fee to such attorney out of, and not in addition to, the amount of such past-due benefits."

claimant. *See e.g., Royzer v. Sec'y of Health & Human Servs.*, 900 F.2d 981, 982 (6th Cir. 1990) (reversing trial court's flat rejection of a contingent fee argument, but warning that "[c]ontingent fees in social security cases are different than in other cases of the law because Congress has put the responsibility on the federal judiciary to make sure that fees charged are reasonable and do not unduly erode the claimant's benefits").

Still, federal courts - far more accustomed to enforcing contracts than to breaking them - are understandably reluctant to rewrite the key term of a facially valid contract for payment between a lawyer and his/her client.

*Ringel*, 295 F.Supp.3d at 822.

Synthesizing the prevailing case law, *Ringel* meticulously set forth five "guideposts" used by most courts within the Sixth Circuit to navigate their duty under the Social Security Act to determine whether a standard contingency fee agreement results in a windfall, even in a case where counsel has done no wrong.

*Gisbrecht* confirmed that a contingent fee agreement may result in an inordinately large - and therefore unreasonable - fee merely by virtue of the benefits being large "in *comparison* to the amount of time counsel spent on the case." *Gisbrecht*, 535 U.S. at 808, 122 S.Ct. 1817 (emphasis added). In short, both *Gisbrecht* and Sixth Circuit authority through *Lasley* [*v. Com'r*, 771 F.3d 308 (6th Cir. 2014)] support reducing a contingent fee to avoid a windfall even if counsel gave more than "minimal" effort and did nothing wrong, where <u>only</u> the passage of time has caused the inordinately large benefit award. *See also Rodriquez*, 865 F.2d at 746, 747 (defining a windfall as resulting from "*either an inordinately large benefit award or* from minimal effort expended," and noting that "with the best of will on the part of the claimant's lawyer, these disability cases are frequently drawn out over a considerable period of time.")(emphasis added, internal quotation omitted).

*Ringel*, 295 F.Supp.3d at 828 (emphasis original). The five guideposts are: (1) the Sixth Circuit's long-standing *Hayes* test;[4] (2) the amount of administrative and/or judicial delay; (3) the quality and quantity of attorney hours expended; (4) whether counsel has

---

[4]*See Hayes v. Sec'y of HHS*, 923 F.2d 418, 422 (6th Cir. 1990).

compromised his fee; and (5) whether the Commissioner has filed any opposition. *Id.* at 842.

Although the Court does not yet have a copy to review, counsel represents that Plaintiff signed a standard contingency fee agreement.[5] Consistent with nearly all such agreements, counsel states that the Agreement authorizes a contingency fee award equal to the full 25% statutory maximum fee of $12,833.05.[6] Counsel has attached his time records and the Notice of Award.[7]

As a first step in determining whether the proposed award is "reasonable" or amounts to a windfall under the *Ringel* guideposts, the undersigned calculates the hypothetical hourly fee and compares that fee with the EAJA-based "standard rate" in accordance with the *Hayes* test. In *Hayes*, the Sixth Circuit rejected the approach of some courts to reduce nearly every contingency fee and acknowledged that a premium may be paid without creating a windfall due to the contingent nature of recovery. Setting forth an elegantly simple test that has withstood the test of time to determine when that contingency premium might be questioned as a windfall, the *Hayes* court explained:

---

[5]Counsel has not included the date or a copy of the Agreement, despite a reference to it being "[a]ttached." (Doc. 24 at 2). However, contingency fee agreements that reflect the maximum statutory fee are standard, with rare exceptions. *See Gisbrecht*, 535 U.S. at 808 n. 15 (acknowledging dissenting view that standard social security fee agreements closely resemble adherence contracts but holding that judicial review together with the statutory cap will ensure reasonableness). Although the undersigned accepts counsel's statement that Plaintiff executed such an Agreement, the final award should be conditioned on counsel's submission of a copy in order to complete the Court's affirmative obligation of review.

[6]Counsel suggests that because he has subtracted the prior EAJA award amount from the additional compensation he seeks, the EAJA award should not be considered. However, the prior EAJA award was paid to counsel. Under controlling case law, counsel would be required to return the EAJA award to avoid double-recovery for the same work performed in federal court. *Janovic v. Sec'y*, 868 F.2d 867 n.1 (6th Cir. 1989). Counsel's offset of the EAJA award, in lieu of remitting the fee to Plaintiff, does not reduce the total fee received by counsel for his 15.5 hours of work. *See Ringel*, 295 F. Supp.3d at 838 (rejecting the "common error" of presenting an hourly rate after decreasing the amount sought by the amount of the EAJA award).

[7]Counsel states that the Social Security Administration withheld 25% from the past due benefits award but the attached exhibits are silent as to any withholding. However, the Agency's failure to withhold fees does not impact this Court's ability to award such a fee, if warranted under the law. *See Culbertson v. Berryhill*, 139 S. Ct. 517 (2019)

> A calculation of a hypothetical hourly rate that is twice the standard rate is a starting point for conducting the *Rodriquez* analysis.  It provides a floor, below which a district court has no basis for questioning, under the second part of *Rodriquez*'s windfall rule ..., the reasonableness of the fee.  In other words, a hypothetical hourly rate that is less than twice the standard rate is *per se* reasonable, and a hypothetical hourly rate that is equal to or greater than twice the standard rate may well be reasonable.

*Id.*, 923 F.2d at 422.  Thus, in cases in which the proposed award is reasonable under the Sixth Circuit's longstanding *Hayes* test, "the windfall analysis is complete."  *Ringel*, 295 F. Supp.3d at 829.

Although some courts have determined a different "standard rate" to be used in the *Hayes* test, the EAJA-based "standard rate" has been used by most courts for multiple reasons, including consistency.

> [C]ourts have adopted the hourly rate that the attorney receives under the EAJA as proxy for the "standard rate" in the *Hayes* test.  EAJA compensation rates work well as a standard rate in the *Hayes* test because in the typical social security case, the EAJA provides the only other means by which counsel may be compensated for work performed in a judicial appeal of a social security case.  In fact, *Hayes* itself referenced hourly rates that appear derived from the EAJA….

> Using an EAJA-based fee for the *Hayes* test assures consistency, since the same attorney usually will have recovered that rate for the same work.  Using that standard also decreases the complexity required for courts to perform the requisite § 406(b) analysis and keeps intact the intended simplicity of *Hayes*, while decreasing satellite litigation over the definition of the "standard rate." Additionally, the EAJA inflation-adjusted rate has been widely adopted in a clear majority of unpublished cases employing the *Hayes* test.

*Ringel*, 295 F. Supp.3d at 829-830.  The presumptive use of EAJA rates in the *Hayes* test builds in inflationary factors including consideration of state bar data over time, because the EAJA rate ultimately is derived from that data.  *Id.*, at 831.  The Sixth Circuit also has acknowledged and affirmed the use of an EAJA-based rate as the "standard rate[ ]

applied to social security fee requests in the Southern District of Ohio." *Lasley,* 771 F.3d at 310.

Here, counsel was previously awarded $2,635.00 under the EAJA for the same 15.5 hours for which he now seeks an additional fee, a rate that translates to a "standard rate" of $175 per hour. The proposed additional fee ($12,833.03) divided by the same number of hours (15.5) yields a hypothetical hourly fee of $827.93, an amount that is more than 4.7 times the previous hourly rate that counsel was awarded for the same work, and that the Commissioner points out is "well above the amount courts in the Southern District of Ohio have found reasonable." (*See* Doc. 25 at 2-4, collecting cases and noting that most courts conclude that the $350-400 hourly rate range constitutes a reasonable award); *see also Lasley*, 771 F.3d 308 (approving Judge Dlott's decision to reduce counsel's fee from $733 per hour to $360 per hour to avoid a windfall).

The *Hayes* test establishes a floor but not a ceiling. In *Ringel*, the court approved a relatively high rate of $600 per hour after explaining the justification on the facts presented, while also explaining the basis of increased scrutiny whenever counsel seeks a higher rate:

> Courts must be willing to approve multipliers above the *Hayes* "floor" when appropriate. At the same time, *Hayes* suggests that the higher the multiplier/rate, the more closely an award should be reviewed for windfall. Even where counsel's conduct is above approach and achieves a good result, the contingent fee to which the claimant agreed may still be too much.

*Ringel,* 295 F.Supp.3d at 833. Although statistical outlier cases may be found, the vast majority of cases in this district support the approach of more closely scrutinizing cases "the higher the multiplier/rate" in order to avoid a windfall.

In support of the unusually high contingency multiplier and fee sought in *this* case,

counsel first focuses on his "very good" representation of Plaintiff since March 7, 2014, when his firm began representing Plaintiff at the administrative level.[8]  Counsel suggests that "because this case was granted at the District Court level, the typical approval of administrative fees, up to the maximum $6,000.00 did not occur." (Doc. 24 at 4).  In his reply memorandum, counsel further argues that if the $6,000 fee had been paid to counsel at the administrative level, "it would be deducted from the withheld amount of $12,833.03, and then the balance of $6,833.03 divided by the 15.5 hours worked would come out to be $440.84 per hour." (Doc. 27 at 2).  Counsel explains that he chose not to petition SSA for work at the administrative level "because the claim was granted at the District Court level.  If the full amount of fees requested herein is granted, there will be no application for fees at the Administrative level." (Doc. 24 at 4).[9]

Counsel seems to be advocating for the award of a higher fee by this Court based upon work counsel's firm performed before the Social Security Agency at the administrative level.  But settled and controlling case law (as well as the explicit statutory language) prohibit this Court from awarding fees for <u>any</u> time outside of this federal court, including time that his firm may have spent on work at the administrative level.  *See, e.g.*, *Horenstein v. Sec'y of Health & Human Servs.*, 35 F.3d 261 (6th Cir. 1994) (en banc); 42 U.S.C. §§ 406(a), 406(b) and 1383(d).

An attorney's willingness to compromise his fee below the maximum allowable fee

---

[8]A non-attorney representative from counsel's firm represented Plaintiff at the hearing before the ALJ.  The extent to which counsel himself may have represented Plaintiff at the administrative level is not clear in the record before this Court, but neither is it relevant for the reasons discussed herein.

[9]Contrary to counsel's argument, this case was remanded for calculation and entry of the final award.  The statutory provisions ensure separate compensation for representatives for work performed at the administrative level and prohibit this Court from awarding any compensation for such work.  Although counsel's argument implies otherwise, (*see* Doc. 27 at 1-2), the award of a fee by this Court has no bearing on counsel's ability to submit a separate application for fees for work performed at the administrative level. *See Culbertson v. Berryhill*, 139 S. Ct. 517 (2019).

authorized by the contingency fee agreement is laudable. And the undersigned would have no difficulty in approving counsel's theoretical hourly fee if that were the actual fee being sought on the record presented. However, counsel's suggestion that this Court should imagine that the hourly rate is roughly half of the actual rate that counsel is seeking is not rational, because counsel has not reduced or compromised his fee in this Court. Moreover, counsel's promise that his firm will not submit a future application to the Agency for work at the administrative level (under a different statutory provision) if he is awarded a large fee by this Court is based upon a mistaken perception that the 25% cap applies to the aggregate of all fees received. Contrary to that perception, the Supreme Court recently held that the 25% statutory cap "applies only to fees for court representation, and not to the aggregate fees awarded under §§ 406(a) and (b)." *See Culbertson v. Berryhill*, 139 S. Ct. at 523.

Counsel next claims that other courts have held that "similar" large fees do not constitute a windfall. Counsel does not cite to any recent published cases in the Southern District of Ohio or even within the Sixth Circuit. Instead, counsel relies on three cases from California and West Virginia decided close in time to *Gisbrecht*, when the "reasonable" standard was still evolving. This Court previously has explained why the same three cited cases are not persuasive in other cases involving counsel's firm.

> [I]n *Claypool v. Comm'r of Soc. Sec.*, 294 F. Supp. 2d 829 (S.D. W. Va. 2003), the amount of past due benefits was more than double the amount awarded in this case, and the resulting fee award, while very high, constituted just 9% of that award. One of the other two cases cited by counsel is unpublished as well as not within this jurisdiction, and both reflect much lower hourly rates than sought by counsel here. *See Dodson v. Comm'r of Soc. Sec.*, 2002 WL 31927589 (W.D. Va. Oct. 22, 2002) ($694.44 per hour) and *Hearn v. Comm'r of Soc. Sec.*, 262 F. Supp. 2d 1033 (N.D. Cal. 2003) ($450.00 per hour).

*Iames v. Com'r of Soc. Sec.*, 2017 WL 574931 at *5 (S.D. Ohio Jan. 25, 2017); *Hicks v. Commissioner of Social Security*, 2016 WL 7634457, at *5 (S.D. Ohio 2016); *see also Ringel*, 295 F. Supp.3d at 833 n.28. The undersigned instead relies upon the more persuasive and controlling case law cited herein.[10]

The second factor under *Ringel* is the degree to which the slow wheels of justice have contributed to an unusually large award. As Judge Weber explained in a 2014 case:

> In the typical case, the quantity and quality of an attorney's services is not causally connected to the amount of benefits obtained. Rather, the size of the claimant's recovery depends on factors such as the claimant's past earnings, the number of dependents and, unfortunately, the delay inherent in the administrative and judicial processes. Accordingly, the United States Court of Appeals for the Sixth Circuit has counseled that courts should not routinely approve the statutory maximum but that 25% should be used as a bench mark and it should be given the weight ordinarily accorded a rebuttable presumption.…
>
> The Sixth Circuit has made clear that an "inordinately large benefit award" occasioned by the passage of time may constitute a windfall of attorney's fees, irrespective of any wrongdoing by counsel.

*Boston v. Commissioner of Social Sec.*, 2014 WL 1814012, at *1 (S.D. Ohio May 7, 2014) (reducing hourly rate from to $400 per hour in order to avoid a windfall to counsel). Here, as in other "windfall" cases, the size of the large past-due benefits award was not due to any conduct by counsel.[11] Rather, the unusually large fee reflects the regrettable slow pace of resolution of Plaintiff's claim, which required more than six years to resolve when both administrative and judicial proceedings are considered. As another court lamented:

> It seems perverse that an ultimately successful disabled claimant should be further punished by the delays of the administrative process. Thatch filed her application on March 24, 2006. It was more than 5 years later before she was ultimately successful. Thus, for five years, Thatch was disabled and not receiving the benefits to which she and her child were entitled by

---

[10]In his reply memorandum, counsel cites to an unpublished case in this district in which he was awarded a hypothetical hourly rate of $969.62. However, based upon the published authority of *Lasley*, *Ringel* and other case law cited *infra*, the instant case does not warrant a similar extreme deviation from the norm.
[11]Counsel sought only a routine extension of time in which to file his Statement of Errors.

10

law. By not taking into account this administrative delay in evaluating a request for attorney fees, the claimants are punished twice. First, they do not receive their benefits in a timely manner. Second, their retroactive benefits are reduced by 25% for the full length of the administrative process. Thus, the only party ultimately benefitting from such a delay is the attorney.

*Thatch v. Com'r of Social Sec.*, 2012 WL 2885432, at *6 (N.D. Ohio 2012); *see also Willis v. Com'r of Soc. Sec.*, Case No. 1:10–cv–594, 2014 WL 2589259 at *5–6 and n.3 (S.D. Ohio June 10, 2014) (Barrett, J.) (reducing § 406(b) award in part because "an estimated one-third of Plaintiff's past due benefits accrued" during administrative delay after remand, citing cases supporting similar reductions for administrative delay); *Woods v. Colvin*, 2014 WL 2918454 at *6 (N.D. Ohio June 26, 2014) (finding delay at administrative level more relevant when fee exceeds *Hayes* test). While counsel's firm is to be commended for patience and persistence (particularly at the administrative level which is not compensable by this Court), the fact remains that counsel spent only 15.5 compensable hours in this Court. The unearned inflation of his fee based solely upon the slow wheels of justice weighs in favor of reduction.

The third guidepost is the quality and quantity of attorney hours expended. Mr. Acciani is a longstanding member of the bar who very frequently appears on behalf of social security claimants in this Court. His experience level is reflected in part in his efficiency, with the 15.5 hours spent on this case falling on the low side of the average time spent by other attorneys prosecuting similar cases.[12] And the undersigned can agree that the quality of representation was "very good" insofar as it produced a large SSI award for Plaintiff. On the other hand, the two assertions of error presented to this Court are the most common claims presented. The case law supporting those claims was well-

---

[12]Counsel's use of standard case law and analysis was appropriate for the routine claims presented on behalf of his client.

established and counsel understandably used language and citations from other cases in which he has appeared.[13]  (*See* Doc. 10, Statement of Errors that argued that the ALJ failed to give the treating physician "controlling weight" and over-relied upon consulting physicians who did not have access to the records of the treating physician).

In *Rodriquez*, the Sixth Circuit explained that why the routine nature of most social security appeals should inform a trial court's analysis of a "reasonable" fee versus a windfall:

> Although we recognize that there are cases where the lawyer's unusual skill or diligence wins the case, typically the number of hours that are required to prosecute an appeal from the Secretary's determination will not vary greatly and will bear little if any relationship to the results achieved. Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards fee would obviously be inappropriate. The reviewing courts should not hesitate to make reductions in such situations, and at the other end of the spectrum should only allow maximum fees for extensive effort on the part of counsel who have overcome legal and factual obstacles to the enhancement of the benefits awarded to his client.

*Rodriquez v. Bowen*, 865 F.2d 739, 747 (6th Cir. 1989) (footnote omitted).

To be clear, the undersigned is not suggesting that counsel expended only "minimal" effort or effort that would be below the average for this case.  However, this case does not justify a windfall award.  As the Court explained in *Ringel*,

> The fact that counsel was guilty of no misconduct does not immunize her fee from windfall reduction.  Nor does the fact that [counsel's] work can be described as "simple and routine" detract from the reality that she performed her job admirably, achieving a significant benefit on Mr. Ringel's behalf.

---

[13]*See Ringel,* 295 F. Supp. at 836 ("[S]ocial security cases reflect a very standardized number of attorney hours…with most…falling near the midpoint of a 12-30 hour range."); *Spiller v. Com'r of Soc. Sec.*, 940 F. Supp.2d 647, 652 (S.D. Ohio 2013) ("Without establishing a firm, bright line rule, …the general range of time expended on these cases is 15-25 hours.")

*Id.*, 295 F. Supp.3d at 837 (noting counsel's Statement of Errors was "formulaic" and consistent with other briefs by the same counsel, using standard arguments and case law). The routine nature of the instant case, notwithstanding counsel's efficient use of standard case law and analysis, weighs in favor of reduction of the unusually high fee award to avoid a windfall.

The fourth *Ringel* guidepost is whether counsel has voluntarily compromised his fee.

> In many unpublished cases in which an unusually high effective hourly rate has been awarded, the trial court will do so after noting that the fee requested does not, in fact, represent the full contracted amount. In those cases, courts point out that the motions reflect a voluntary compromise of the contingent fee well below the agreed-upon 25%, in recognition of the fact that the contract would result in a windfall. *See, e.g., Lowery*, 940 F.Supp.2d 689 (granting unopposed motion where counsel sought only 14.5% of past-due benefits representing an effective hourly rate of $406, rather than full contingent fee); *Willis v. Com'r*, 2014 WL 2589259 at *5 ("While counsel is not required to seek less than the 25 percent contingency fee, a discounted fee or the lack thereof is relevant to a reasonableness determination")(collecting cases)

*Id.*, at 838-839.

Here, counsel's motion clearly acknowledges the windfall potential inherent in his standard contingency fee but offers no real compromise.

> This factor can put counsel in the difficult position of bidding against themselves, as it were, by offering to take a significantly reduced fee in lieu of the contracted amount agreed to by their clients. Yet, the statute authorizes only a "reasonable" fee, which does not include a windfall. Application of *Hayes* and similar guideposts continue to alert both counsel and courts of whether further windfall review is warranted. In cases where the *Hayes* test or significant delay suggest possible windfall, the extent to which counsel has offered to compromise the fee (or failed to compromise) will be more relevant. *See Willis*, 2014 WL 2589259 at *5 (holding that voluntary reduction "is particularly relevant where, as here, the Court's judgment was followed by an administrative delay in the final award of past-due benefits").

*Ringel*, 295 F.Supp.3d at 839. After filing his motion, counsel had an additional

opportunity to compromise his fee in his reply memorandum.  His choice not to do so favors a reduction.  *Contrast Ringel*, 295 F. Supp.3d at 840-841 (awarding higher-than-usual fee in part because attorney had offered some minimal compromise in her initial motion and additional compromise in her reply memorandum).

The fifth guidepost also favors a reduction, since the Commissioner has filed a well-supported memorandum as a trustee for the Plaintiff.  Such opposition is relatively rare and should be taken seriously.

> Unlike the underlying judicial appeal or an EAJA award, the Commissioner has no direct financial stake in the § 406(b) fee. Filing any opposition to a fee motion not only requires the Commissioner's attorney to devote scarce resources to briefing a matter in which his client will not benefit, but also requires counsel to reverse his/her earlier role and advocate in support of the Commissioner's previous opponent, who has not asked for such assistance. *Accord Wells v. Sullivan*, 907 F.2d 367, 372 (2nd Cir. 1990) (noting "the anomalous role of the Social Security Administration in first denying benefits to a claimant, and then after losing the case, posing as a protector of the plaintiff, but spending more time and money in order to reduce the fees to be paid to the claimant's attorney.") In cases like Mr. Ringel's, the Supreme Court accurately predicted that the Commissioner would play "a part ... resembling that of a trustee for the claimants," *see Gisbrecht,* 535 U.S. at 798 n.6, 122 S.Ct. 1817, but scores of unopposed motions give testament that such opposition remains rare. *See Bailey v. Heckler*, 777 F.2d 1167, 1169 (6th Cir. 1985) (rejecting argument that the fee should be approved because it is unopposed, since "claimant is unlikely to object to an allowance of a fee in accordance with his contingent fee arrangement, for, rightly or wrongly, he will usually give the lawyer all of the credit for the success in winning an award of benefits for him") (internal quotation and citation omitted).

*Ringel*, 295 F. Supp.3d at 823 (footnote omitted).

In conclusion, none of the five common guideposts cited in *Ringel,* nor any other persuasive or controlling authority cited by counsel supports such a high hourly rate of $827.93 as "reasonable" in this case, even considering the "contingency premium" and all other relevant factors.  Based upon the controlling authority of the Supreme Court and the Sixth Circuit, and other authority cited herein that requires this Court to disapprove of

any fee that would result in a windfall to counsel, the undersigned concludes that any presumption of reasonableness has been thoroughly rebutted. Instead, based upon the exercise of judicial discretion and the record presented, the undersigned concludes that a "reasonable" fee consistent with the contingent nature of recovery is $440.84, the hypothetical hourly rate suggested by counsel himself as fair and reasonable for his 15.5 hours of work in this Court. That sum represents 2.5 times the "standard rate" that counsel previously received for the same work and awards him a "contingency premium" without straying into the realm of a windfall at the expense of his long-suffering client.

The calculation of the recommended award would result in a total contingency fee award of $6,833.02 for the 15.5 hours of work spent in this Court (15.5 x $440.84). The prior EAJA award must be subtracted from that sum as an offset in order to avoid a double recovery. Thus, the total additional fee to be awarded under 42 U.S.C. §1383(d) equals $4,538.02, or $6,833.02 - $2295.00 (the prior EAJA fee not including costs)

### III. Conclusion and Recommendation

Plaintiff's motion should be granted only in part to avoid a windfall for the reasons stated herein. Having determined a "reasonable" fee under *Ringel* and controlling case law, **IT IS RECOMMENDED THAT** the motion for an award of attorney's fees be construed as if filed under 42 U.S.C. § 1383(d) and be **GRANTED in part**. Specifically, the undersigned recommends that counsel be awarded the additional net fee of $4,538.02, conditioned on counsel's submission to the Court of a copy of the referenced fee agreement.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CARL E. BERRY,                                    Case No: 1:18-cv-207

                    Plaintiff,                    Black, J.
          v.                                      Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


**NOTICE**

        Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of

the filing date of this R&R.  That period may be extended further by the Court on timely

motion by either side for an extension of time.  All objections shall specify the portion(s)

of the R&R objected to, and shall be accompanied by a memorandum of law in support

of the objections.  A party shall respond to an opponent's objections within **FOURTEEN**

**(14) DAYS** after being served with a copy of those objections.  Failure to make objections

in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474

U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).